UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action #: _____

**04    11822 RGS**

_____ )
Gail F. Thomas,                )
         Plaintiff        )
v.                       )
                MAGISTRATE JUDGE _____ )
Daniels Law Offices, P.C.,    )
         Defendant     )
_____ )

COMPLAINT and
DEMAND FOR JURY TRIAL

RECEIPT # _____
AMOUNT $_____
SUMMONS ISSUED _____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE _____

## I. INTRODUCTION

1. This is an action for actual and statutory damages brought by Plaintiff Gail F. Thomas, an individual consumer, against Defendant Daniels Law Offices, P.C. for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

## II. JURISDICTION

2. Jurisdiction of this court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331. Venue in this District is proper in that the defendant transacts business here and the conduct complained of occurred here.

## III. PARTIES

3. The plaintiff, Gail F. Thomas, is a natural person residing in Washington, DC.

4. Defendant, Daniels Law Offices, P.C. ("DLO"), is a Massachusetts professional corporation engaged in the business of collecting debt in this state with its principal place of business located at One Center Plaza, Boston, MA. A principal purpose of Defendant is the collection of debts and defendant regularly attempts to collect debts alleged to be

due another as indicated on their website, a copy of which is attached as Exhibit A.

5. Defendants are engaged in the collection of debts from consumers using the mail and telephone. Defendants regularly attempt to collect consumer debts alleged to be due to another. Defendants are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## IV. FACTUAL ALLEGATIONS

6. On or about June 15, 1999, plaintiff ("Ms. Thomas") signed a promissory note with the Massachusetts Educational Financing Authority ("MEFA"), the creditor, establishing Account #138860299 ("Loan #1"). The original financed amount is $13,225.81. Repayment is set to begin January 1, 2002.

7. Defendant signed the note for Loan #1 while living in San Bruno, CA. The cover letter for the Loan #1 promissory note is attached as Exhibit B.

8. On or about July 27, 1999, MEFA issued a revised disclosure for Loan #1 that implies the original financed amount is $11,636.56.

9. Ms. Thomas, in her desire to meet the requirements of the loan note, notified MEFA of her new address in Boston, MA, on or about July 27, 1999.

10. On or about August 5, 2000, Ms. Thomas signed a promissory note with MEFA establishing Account #227174000 ("Loan #2"). The original financed amount is $11,827.96. Repayment to begin December 1, 2001.

11. On or about August 14, 2000, MEFA issues a revised disclosure for Loan #2 that implies the original financed amount is $11,443.01.

12. Because of Ms. Thomas' reduced eligibility for Loan #2, the amount available from MEFA is decreased and Suffolk University issues a check to MEFA for $3,985 on or about March 1, 2001.

13. MEFA never sends a revised disclosure to Ms. Thomas, nor does it acknowledge the reduction in the loan amount in any other way.

14. On or around October 17, 2001, Ms. Thomas sent a letter to MEFA (c/o Key Education Resources) via certified mail referencing both loan numbers. Ms. Thomas' job offer after graduation did not come to fruition and she wanted to combine the loans into one account for ease of management. Knowing that her unemployment will adversely affect her ability to repay the loans, Ms. Thomas requested guidance as to how she can pay a reduced amount and work with MEFA to arrange some type of temporary relief until she finds employment.

15. On or around November 1, 2001, KeyBank writes that Loan #1 enters repayment status on January 1, 2002 and monthly payments of $121.41 are due each month.

16. Ms. Thomas communicated with KeyBank and MEFA frequently in writing and over the telephone during the repayment period from Fall 2001 through July, 2003. Each communication was designed to negotiate a way for Ms. Thomas to pay off the debt using a modified payment schedule: Ms. Thomas was still unable to find employment, wanted to be responsible, but was unable to afford full monthly payments through July, 2003.

17. Instead of making full monthly payments, Ms. Thomas paid the amount she could afford each month. For some months, this would amount to a full payment of at least one of the

two loans. In some months, she would exceed the monthly amount in order to catch up to the amount in arrears.

18. On or around October 16, 2002, Ms. Thomas writes to MEFA explaining that she does not understand why there is no distinction between debtors who want to meet their obligations and those who do not. Ms. Thomas states that she is in good faith attempting to work with MEFA and KeyBank to meet her obligations but that no one could have predicted she would remain unemployed for over a year. Additionally, Ms. Thomas points out that she is already under immense stress and is conducting an intensive job search and has only minimal resources.

19. Ms. Thomas continued to make payments on both loans after MEFA and KeyBank stopped responding to requests for assistance in the Fall of 2002. Minimal payments were made every month from November, 2002, to June, 2003 (except for February) and included a note stating that Ms. Thomas was awaiting a decision on getting a modified repayment plan.

20. On or around May 14, 2003, Ms. Thomas mails a small payment for each loan to MEFA's new loan servicing agent: ACS. On or around June 20, 2003, ACS returns the two checks and informs Ms. Thomas that they cannot accept payment because the loan is in default.

21. On or around July 1, 2003, Ms. Thomas writes to MEFA because she is not able to get any response from anyone about her loans. She informs MEFA that she has finally secured employment, has a new address in Washington, D.C. and that she can begin making full payment in August, 2003, now that she is employed. There is no response to

her letter.

22. On or around August 1, 2003, Ms. Thomas writes to DLO, the defendant and the attorney she thinks is handling the debt collection because of their inquiry she finds on her credit report. This is the first communication between DLO and Ms. Thomas and is initiated by Ms. Thomas. She requested guidance from DLO because the loan servicer, ACS, tells her to contact MEFA and no one at MEFA communicates with her or cashes the checks she has been sending in. DLO received the letter August 4, 2003. See attached Exhibit C.

23. On or around August 1, 2003, Ms. Thomas re-sent the returned checks to MEFA explaining that she has been trying to make payments on the loan but is getting no response. Ms. Thomas explains that her recent employment allows her to begin making full monthly payments on both loans in August 2003.

24. On or around August 7, 2003, Ms. Thomas received the first communication from DLO (attached as Exhibit D) in an unsigned letter on law office letterhead. The document contained a breakdown of what appeared to be Loan #1. The letter claimed that DLO had made several attempts to contact Ms. Thomas and that both parties needed to discuss the unpaid obligation. The letter states that "Attorney's Fee" amount is $2,042.61 and the "Pre-Judgment Interest" is $602.48. The letter was wholly inaccurate because Ms. Thomas had never been contacted and was the only person doing any work to resolve the debt.

25. On or around August 8, 2003, Ms. Thomas received a second unsigned letter from DLO (attached as Exhibit E) referencing only Loan #1 informing her to send all payments

payable to DLO at DLO's address. Additionally, the letter instructed Ms. Thomas to contact DLO so that they could "work out an amicable payment arrangement".

26. On or around August 8, 2003, Ms. Thomas received the first and only document from DLO mentioning Loan #2 (attached as Exhibit F) before being sued on the full amount of Loan #2. It is another unsigned letter from DLO informing her to send all payments payable to DLO at DLO's address. Additionally, the letter instructed Ms. Thomas to contact DLO so that they could "work out an amicable payment arrangement".

27. On or around August 15, 2003, Ms. Thomas responded to DLO (attached as Exhibit G) that she had never been informed of DLO's involvement in her account. She stated it was very confusing to someone who only wanted to work out a way to settle her debt. Ms. Thomas suggested a payment plan of $241 month which would cover the monthly payments of each loan required by the original payment plan with MEFA. She further stated that she would be willing to increase the monthly amount if successful in increasing her income.

28. On or around August 29, 2003, Ms. Thomas wrote to DLO (attached as Exhibit H) and informed them that she assumed her payment plan has been accepted because she had not heard a response. The first payment of $241 was attached. Additionally, she explained that the amounts that appeared in the breakdown from DLO were not correct and provided a history of the payment she had made: which totaled $1812.03 since repayment began. Ms. Thomas alleged violations of FDCPA and requested that an up to date account balance be sent showing the transactions on her account. DLO received the letter and payment on September 2, 2003 and the check was cashed on September 3, 2003.

29. On September 10, 2003, DLO filed a complaint, with MEFA as the named plaintiff, in a lawsuit in the Boston Municipal Court (attached as Exhibit I). The complaint included a demand for judgment against Ms. Thomas for: $13,922.42 on Loan #1 together with costs, interest and an attorney's fee in the amount of $2,042.61; and $8,380.94 on Loan #2 together with costs, interest and an attorney's fee in the amount of $1251.22.

30. On or around September 18, 2003, DLO sent another unsigned letter on law office letterhead (attached as Exhibit J) to Ms. Thomas. The letter falsely indicated that Ms. Thomas had already been advised by DLO about the acceptance of her suggested payment plan. This letter is the only response of any kind from DLO and it referred to only one loan and stated that the payment plan offered by Ms. Thomas was "too low" to "dismiss or forbear from court action against [Ms. Thomas]". DLO states that it is charging "attorney's fees of 15%".

31. On or around September 22, 2003, Ms. Thomas wrote to DLO again (attached as Exhibit K) and corrected DLO as to a starting date of September, not October, 1, 2003. She included the second payment of $242 for October 2003 along with a payment coupon for each loan. DLO received the letter on September 26, 2003.

32. On or around September 24, 2003, Ms. Thomas received a signed account breakdown from DLO. There was no response to Ms. Thomas' earlier request for an account balance that includes the detail of the transactions she has made.

33. On or around September 28, 2003, Ms. Thomas again wrote to DLO (attached as Exhibit L) to dispute the amounts reflected on their account breakdown. Ms. Thomas also questioned the "Attorney's Fee's" and "Pre-Judgment Interest" that appeared on the

account breakdown. She requested a more complete explanation of these charges. DLO received the letter on October 1, 2003.

34. The next correspondence Ms. Thomas received from DLO or MEFA was a summons (see attached Exhibit I) taped to her apartment door on October 16, 2003, for the complaint filed in the Boston Municipal Court.

35. Ms. Thomas has made her promised monthly payments is substantially the same manner for September 1, 2003 through the date of this complaint and will continue to do so. Certified Mail with Return Receipt Requested was used for each monthly payment to ensure DLO did not lose the payments. Each payment was received by DLO and each check was cashed by DLO. The payments sent to DLO, although with some slight variation during the first three months, are all substantially the same as the attached Exhibit M indicating that the payment is to be applied to two loans.

36. On or around December 19, 2003, DLO sent an account breakdown of Loan #2 (attached as Exhibit N) directly to Ms. Thomas, despite the fact that Ms. Thomas was represented by counsel. The breakdown was on law office letterhead and stated that "Attorney's Fee" amount is $1251.22 and the "Pre-Judgment Interest" is $658.47.

37. On or around December 19, 2003, DLO filed a "Request for Default" (attached as Exhibit O) in the Boston Municipal Court, even though the matter had already been removed to Superior Court. DLO sent a copy of the filing directly to Ms. Thomas, despite the fact that she was represented by counsel. In supporting the Request for Default, DLO stated that "[Ms. Thomas has] failed to serve or file an answer or otherwise defend as to the complaint" even though an answer was filed on December 3, DLO

received a fax copy on December 11, and a copy via mail on December 15.

38. As a result of the acts alleged above, Plaintiff suffered anxiety and stress. She was under a financial and emotional burden to take the steps necessary to sort out the complete lack of meaningful information she was getting from DLO and their complete unwillingness to resolve the issue without needing to resort to litigation. Despite her best efforts to do the right thing and repay her loans, DLO was unresponsive and sued her for thousands of dollars of extra fees above and beyond her student loans, several hundred miles from her home. To protect herself, she had to expend money to get legal assistance and ensure all of her communications could be documented and delivery proven. After an eighteen month job search, her professional dedication at her new job was questioned because of a two year "proving period" during the first two months of which she had to deal with a completely unnecessary lawsuit. Ms. Thomas needed to take time from work to meet with her attorney, express mail items and generally deal with the mess DLO created. With absolutely no useful information coming from DLO, she was under severe stress and anxiety trying to determine what a lawyer with all the wrong information was going to do to her.

## V.  CLAIM FOR RELIEF

39. Plaintiff repeats and realleges and incorporates by reference to the foregoing paragraphs.

40. Defendant violated the FDCPA. Defendant's violations include, but are not limited to, the following:

   a.  DLO failed to provide written notice to Ms. Thomas that she had thirty days to dispute the debt for Loan #1 and Loan #2. Such a failure to provide notice is a

violation of FDCPA § 1692g.

b.  By failing to give Ms. Thomas any meaningful opportunity to avoid litigation and
its associated costs, DLO's conduct is oppressive and abusive.  Such conduct is a
violation of FDCPA § 1692d.

c.  Filing for an entry of default with the Boston Municipal Court and falsifying
information to the court is false, deceptive and misleading conduct.  Such conduct
is a violation of FDCPA §1692e.

d.  DLO has consistently misrepresented the amount due and has added on
"Attorney's Fee[s]" before any attorney was involved with the case.  The 15%
amount added to the debt was not reasonable given the near complete lack of any
meaningful involvement of anyone at DLO in handling the collection.  Such
conduct is a violation of FDCPA §1692e(2) and f(1).

e.  No attorney at DLO had any meaningful involvement with issuing any
communications on law office letterhead or reviewing the status of the loans in
question or Ms. Thomas' willingness to work out an arrangement.  However,
communications on law office letterhead created the deceptive implication that a
lawyer was involved and had reached a considered legal opinion as to the status
of the loans.  Such conduct is a violation of FDCPA §1692e, e(3) and e(10).

f.  DLO's initial communication implied that DLO had attempted to contact her
before August 2003.  This created a false impression that personal attention was
being paid to her case because no one at DLO had ever contacted her before, nor
had anyone ever told her DLO was involved with her loan collection.  Such

conduct is misleading and deceptive and is a violation of FDCPA §1692e(10).

g.  DLO operated an unfair and unconscionable collection method by filing suit

against a cooperative debtor who has received no meaningful opportunity to avoid

litigation.  Such conduct is misleading and deceptive and is a violation of FDCPA

§1692f.

h.  DLO never sent the required validation notice on either of the two loans.  Such a

failure is a violation of FDCPA §1692g.

i.  Despite never receiving a validation notice, Ms. Thomas requested a verification

of the amounts due in writing.  DLO ignored her requests and gave no responsive

information.  Such conduct is a violation of FDCPA §1692g(b).

j.  DLO's failure to stop its collection activities on each loan despite a request for

verification is a violation of FDCPA §1692g(b).  Had anyone at DLO paused to

review the status of her case, costly litigation could have been avoided.

k.  In her monthly payments to DLO, Ms. Thomas has directed that the amount be

divided between the two loan accounts DLO is handling.  DLO has failed each

month to follow the payment directions.  Such a failure is a violation of FDCPA

§1692h.  The confused status of the balance of her two loans before DLO filed

suit has only become worse because they do not correctly apply payments.

l.  Loan #1 was executed in San Bruno, CA, and Ms. Thomas now lives in

Washington, DC.  DLO has filed suit in Boston, MA, which is a violation of the

requirements of FDCPA §1692i.  The FDCPA requires that venue for debt

collection is appropriate only where the contract was signed or where the debtor

lives.  DLO has been aware of this violation at least since Ms. Thomas answered

their complaint in the Boston Municipal Court in December 2003.

41. As a result of the foregoing violations of the FDCPA, defendant is liable to the plaintiff

Gail F. Thomas for actual damages, statutory damages, and costs and attorney's fees.

WHEREFORE,

42. Plaintiff Gail F. Thomas respectfully requests that judgment be entered against defendant

Daniels Law Offices, P.C. for the following:

   a.  Actual damages;

   b.  Statutory damages pursuant to 15 U.S.C. § 1692k;

   c.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

   d.  For such other and further relief as the Court may deem just and proper.

43. Defendant demands trial by Jury on all claims and all issues.

                                    Respectfully submitted,
                                    Gail F. Thomas (defendant),
                                    By her Attorney,

                                    John K. Talbot
                                    Law Office of John K. Talbot
                                    317 West Street
                                    Dedham, MA 02026
                                    BBO # 655187
                                    Tel #: 781-752-4040
                                    Date: Thursday, August 19, 2004

VERIFICATION: I, Gail F. Thomas, hereby certify under the pains and penalties of perjury
that the facts contained in the foregoing Complaint are true and correct to the best of my
knowledge, information and belief.

                                    Gail F. Thomas

Daniels Law Offices, P.C.

# Exhibit A



## Debt Collection / Bankruptcy / Litigation



**DANIELS LAW OFFICES, P.C.** and other similarly organized debt collection law firms have made collection agencies obsolete. **DANIELS** employs high quality collectors and the latest computer and telephone technology, together with state of the art skip tracing, to provide a collections powerhouse unlike anything available until now.

Historically, financial institutions have had to choose between the immediate dollars provided by collection agencies and the higher dollar returns provided by lawyers, but over a longer period of time. That choice is a thing of the past. **DANIELS LAW OFFICES, P.C.** and its separately owned national collection law firm partners provide full collection agency services and immediate dollar returns, together with the ultimately higher dollar returns of law firm placements. National, regional or statewide debt collection is now truly a "one stop shopping experience."



We are members of:

National Association of Retail Collection Attorneys

Commercial Law League of America

Daniels Law Offices, P.C.

American Collectors Association
National Attorney Network

Placement over any and all attorney networks is available...

More about Daniels Law Offices, P.C.

Employment Opportunities at Daniels

Contact us

 Client Access Login

Messaging System Login

### Daniels Law Offices, P.C.
One Center Plaza
Boston, Massachusetts 02108-1804
**(617) 227-7300**
**FAX (617) 227-9643**

This Web Site may be considered advertising under the rules of the Massachusetts Supreme Judicial Court.

# More about DANIELS...

- **DANIELS LAW OFFICES, P.C.** is the oldest and largest retail and commercial collection and Bankruptcy law firm in Massachusetts.

- The pre-eminent attorney rating firm in the world has accorded **DANIELS** its highest rating.

- **DANIELS** will accept your placements of delinquent accounts in any format you choose, whatsoever, hard copy, magnetic tape, diskette, telecommunication, Internet or network.

- Your cases will be processed promptly and assigned to an attorney / collector / paralegal team.

- Demand will be made at once, compliant with the FDCPA and state debt collection laws.

- Our team will counsel your debtors who are willing to work with us and will institute legal action against those who are financially responsible but not willing to work with us.

- **DANIELS** will provide the highest net dollar back to you consistent with our professional responsibility to you and to your debtors.

- You will receive as much as collection agencies can provide in the same time frame as agencies do, but you will also receive, in the end, a net dollar back an order of magnitude greater than agencies are able to provide.

# Exhibit B


**MEFA**

June 8, 1999

Ms. Gail F. Thomas
3600 Tree Tops Circle #102
San Bruno  CA  94066

Re:    MEFA Graduate Loan
       Account  138860299
       Gail Thomas

Dear Ms. Thomas:

Thank you for applying for the Massachusetts Educational Financing Authority's MEFA Graduate Loan program.

On behalf of Suffolk University, we have preliminarily approved your loan amount of $12,300.00.

The Promissory Note and Disclosure Statement reflecting the terms of this loan are enclosed. Please review these documents carefully. All four copies of both documents must be signed and dated by the borrower, co-signer (if applicable) and student co-signer. Please keep the pink copies of the Promissory Note and Disclosure Statement for your records and return the other three to the school representative listed below.

Upon receipt of the signed documents, your school will certify the loan and may lower the loan amount based on the maximum of the student's total cost of attendance minus other financial aid, if any.  If the school certifies the loan for less than $12,300.00, we will then send you a new Disclosure Statement for your records.

Throughout this process, the Massachusetts Educational Financing Authority and Suffolk University will be available to assist you.  If you have specific questions about this particular application or the future servicing of this loan, please call our MEFA loan originations department at (800) 266-0243.

We are pleased to be able to provide this funding in cooperation with our participating colleges and universities and look forward to our continued relationship with you.

Sincerely,

*Thomas G. Murphy*

Thomas G. Murphy
Director of MEFA Loan Operations

cc:    Ms. Jeanne Morton
       Student Loan Coordinator
       Suffolk University
       8 Ashburton Place
       8th Floor
       Boston  MA  02108

25

# Exhibit C

August 1, 2003

Daniel Law Offices PC
One Center Plaza - Mezz 10
Boston, MA 02108

Dear Sir or Madam:

I obtained your name from my credit report. I assume that you are associated with the MEFA student loan program for collection purposes. I would like to request your advice. Due to long-term unemployment, I was only able to make partial payment to MEFA for the past year. However, recently I have gained full time employment and would like to start making full payments again. As you know, MEFA has changed its payment-processing arm to ACS. Apparently ACS does not process loan that are in default status nor accept partial payments. For the past several months I have been forwarding checks to both ACS and MEFA, but the checks are either being returned or are not being processed. I have also written letters to both MEFA and ACS re: the un-cashed checks and have only received response from ACS suggesting to send payment directly to MEFA who does not cash the checks nor respond to correspondence. I have attached copies of related correspondence for your information.

If you could provide any information on how to proceed with the above dilemma or insight on this problem, I would greatly appreciate it. If you are no longer associated with MEFA, please contact me so that I may proceed accordingly.

Thank you,

Gail Thomas
5415 Connecticut Ave NW Apt 125
Washington DC 20015





**Certified Mail Provides:**

- A mailing receipt
- A unique identifier for your mailpiece
- A record of delivery kept by the Postal Service for two years

**Important Reminders:**

- Certified Mail may ONLY be combined with First-Class Mail or Priority Mail.
- Certified Mail is not available for any class of international mail.
- NO INSURANCE COVERAGE IS PROVIDED with Certified Mail. For valuables, please consider Insured or Registered Mail.
- For an additional fee, a Return Receipt may be requested to provide proof of delivery. To obtain Return Receipt service, please complete and attach a Return Receipt (PS Form 3811) to the article and add applicable postage to cover the fee. Endorse mailpiece "Return Receipt Requested". To receive a fee waiver for a duplicate return receipt, a USPS® postmark on your Certified Mail receipt is required.
- For an additional fee, delivery may be restricted to the addressee or addressee's authorized agent. Advise the clerk or mark the mailpiece with the endorsement "Restricted Delivery".
- If a postmark on the Certified Mail receipt is desired, please present the article at the post office for postmarking. If a postmark on the Certified Mail receipt is not needed, detach and affix label with postage and mail.

**IMPORTANT:** Save this receipt and present it when making an inquiry.
Internet access to delivery information is not available on mail addressed to APOs and FPOs.

**COMPLETE THIS SECTION**

Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
Print your name and address on the reverse so that we can return the card to you.
Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ginn + Hancock
Deanne Law Offices
One Center Plaza Fl22 10
Boston, MA 02108

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number
   (Transfer from service label)

   7003 1010 0004 1993 7515

PS Form 3811, August 2001    Domestic Return Receipt    2ACPIR-03-Z-0985



**UNITED STATES POSTAL SERVICE**

## Track & Confirm

#### Current Status

You entered 7003 1010 0004 1993 7515

Your item was delivered at 10:44 am on August 04, 2003 in BOSTON, MA 02108.

*Shipment Details >*

#### Notification Options

▶ **Track & Confirm by email**    What is this?    *Go >*

**Track & Confirm**
Enter label number:

**Track & Confirm FAQs**



POSTAL INSPECTORS
Preserving the Trust

site map  contact us  government services
Copyright © 1999-2002 USPS. All Rights Reserved. Terms of Use  Privacy Policy

**Exhibit D**

## DANIELS LAW OFFICES, P.C.
*Attorneys at Law*
*One Center Plaza*
*Boston, Massachusetts 02108-1801*
*Telephone (617) 227-7300   Facsimile (617) 227-9643*

RICHARD S. DANIELS, JR.

KAREN J. WISNIOWSKI
JOHN P. MURRAY
SAMANTHA R. MECKLER
MICHAEL J. SWEDICK

| | |
|---|---|
| MONDAY - THURSDAY | 8:00 - 8:30 |
| FRIDAY | 8:00 - 5:00 |
| TOLL FREE | (800) 339-4595 |
| COLLECTION FAX | (617) 454-3434 |
| LITIGATION FAX | (617) 454-3435 |

August 7, 2003

MAF 5021-1307, 00138860299    6
Gail F Thomas
5415 Connecticut Ave N W
Apt 125 Washington, DC    20015

Dear Sir/Madam:    Re: Mass. Educational Financing Authority

We recently made several attempts to contact you, without success. We need to discuss your unpaid obligation. The following is a breakdown of your account to date.

| | |
|---|---|
| Placement Amount | $ 13,922.42 |
| Attorney's Fee | $ 2,042.61 |
| Debits | $ 0.00 |
| Charges | $ 4.50 |
| Pre-Judgment Interest | $ 602.48 |
| Post-Judgment Interest | $ 0.00 |
| **Total Debits** | $ 16,572.01 |
| Payments to Client | $ 40.00 |
| Payments to Us | $ 0.00 |
| Payments to Corresponding Attorney | $ 0.00 |
| Miscellaneous Credits | $ 0.00 |
| **Total Credits** | $ 40.00 |
| **BALANCE DUE** | $ 16,532.01 |

Contact this office by telephone at once.

Very truly yours,

Daniels Law Offices, P.C.

This is an attempt to collect a debt and any information obtained will be used for that purpose. We are debt collectors.

22

# Exhibit E

### DANIELS LAW OFFICES, P.C.
*Attorneys at Law*
*One Center Plaza*
*Boston, Massachusetts 02108-1804*
*Telephone (617) 227-7300    Facsimile (617) 227-9643*

August 6, 2003

MAP ID#: 1-17, 00138060299
Bill P. Thomas
1411 Connecticut Ave N W
Apt 107 Washington, DC   20016

Re: Mass. Educational Financing Authority

This office has recently received notice that you have
made a payment directly to our client. This office is now
handling your account. Please be advised that all future
payments should be made to this office and made payable to
Daniels Law Offices, P.C.

Please contact this office so that we can work out an
acceptable payment arrangement that is acceptable to our
client.

DANIELS LAW OFFICES, P.C. and your creditor reserve
the right under 940 C.M.R. s. 7.04(1)(f) to pursue all
legal remedies against you at a time later than 14 days from
the date hereof or not to pursue any legal remedies against
you at all.

Very truly yours,

Daniels Law Offices, P.C.



This is an attempt to collect a debt and any information obtained will be used for that purpose. We are debt collectors.